IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-01622-MSK

**HARRY FOWLER,**

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

**ORDER REVERSING AND REMANDING DISABILITY DETERMINATION**

**THIS MATTER** comes before the Court as an appeal from the Commissioner's Final Administrative Decision ("Decision") determining that the Plaintiff Harry Fowler is not disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Having considered all of the documents filed, including the record (#**11**), the Court now finds and concludes as follows:

## JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g). Mr. Fowler filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act on March 14, 2014. The state agency denied his claim. He requested a hearing, and a supplemental hearing, before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision. Mr. Fowler appealed to the Appeals Council, which denied his request for review, making the ALJ's determination the final decision of the Commissioner. Mr. Fowler timely appealed to this Court,

which reviews the ALJ's decision as the Commissioner's final denial of benefits. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## STATEMENT OF FACTS

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis below.

Mr. Fowler was born in 1961. He was 47 years old at the alleged onset of his disability in January 2009. The record reflects he has a work history as carpenter, and in various other jobs including driving a forklift. He testified before the ALJ that he earned engineering credit while in the Navy and has an Associate's degree related to computers. As summarized by the ALJ and further detailed below, his relevant medical history includes extensive hospitalizations and related treatments for abdominal pain, nausea, and vomiting, beginning around March 2010. He has reported to medical providers that his ex-wife poisoned him with arsenic in 2001. At different times, he has been diagnosed with a bowel disorder related to arsenic poisoning, a neuropathic bowel disorder, irritable bowel syndrome, cyclic vomiting syndrome, and cannabinoid hyperemesis syndrome.

Mr. Fowler also has a history of marijuana use relevant to the issues raised here. Since at least April 2010, he has reported that marijuana use abates or alleviates his symptoms. However, since at least since July 2011, certain medical providers have suggested his symptoms are caused by marijuana use, and have diagnosed cannabinoid hyperemesis syndrome. Mr. Fowler maintains in this appeal that his symptoms are caused by cyclic vomiting syndrome.

## THE ALJ'S DECISION

The ALJ analyzed this case pursuant to the sequential five-step inquiry. At step one, the ALJ found Mr. Fowler had not engaged in substantial gainful activity since January 31, 2009.

(#**14** at 26).

At step two, the ALJ found that Mr. Fowler "has the following medically determinable impairments: cannabis hyperemesis syndrome, a history of arsenic poisoning, chronic renal failure, a history of neck pain, affective disorder, and substance abuse disorder." *Id.* But, the ALJ then found that none of Mr. Fowler's impairments, alone or in combination, were severe, instead determining that Mr. Fowler "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [Mr. Fowler] does not have a severe impairment or combination of impairments," as defined by the Social Security Act and the Commissioner's Regulations. *Id.* The ALJ therefore found Mr. Fowler was not disabled as defined by the Social Security Act, and the ALJ's analysis ended at step two.

## ISSUES PRESENTED

Mr. Fowler raises three issues on appeal: (1) Whether the ALJ's conclusion that he did not have a severe impairment was supported by substantial evidence; (2) Whether the ALJ erred by depending on objective tests and exam results; and, (3) Whether the ALJ improperly evaluated the opinion of Mr. Fowler's primary care provider, Dr. Hans Elzinga, M.D.

## STANDARD OF REVIEW

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).

Substantial evidence means evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although a reviewing court must meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

In addition, if the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

### A. The ALJ's Step-Two Severity Determination

As quoted above, at step two the ALJ found Mr. Fowler had several medically-determinable impairments, but that none were severe. Mr. Fowler argues this conclusion was erroneous in several ways. Initially, he argues that the ALJ's finding misapplied the controlling legal standard and is not supported by substantial evidence. The Court agrees.

Under the Commissioner's Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522; *see also* 20 C.F.R. § 404.1520(c).[1] "The Supreme

---

[1] "Basic work activites . . . mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and peaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of

4

Court has adopted what is referred to as a 'de minimus' standard with regard to the step two severity standard: '[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)). The step two severity determination is "based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Langley*, 373 F.3d at 1123. "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

The Court finds that the ALJ's step-two analysis did not apply the correct *de minimus* or "slight abnormality" legal standard. The ALJ reviewed the medical evidence, observing that Mr. Fowler had repeatedly sought hospital and physician treatment for nausea, vomiting, and related abdominal pain between 2010 and 2015. Among other records, the ALJ noted that in 2012 a treating physician, Dr. Kristina Schnell "noted [Mr. Fowler] was well-known to have cyclic vomiting syndrome secondary to neuropathic bowel disorder" (#**11** at 29). The ALJ went on to note numerous emergency room, hospital, and office visits for treatment of similar symptoms, continuing at least through late-2015. Given this review, the ALJ found that "[Mr. Fowler's] medically determinable impairments could reasonably be expected to produce [his] alleged symptoms." *Id.* at 31.

However—without ever articulating the controlling "de minimus" standard—the ALJ then went on to conclude that "[Mr. Fowler's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and

---

judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. §404.1522(b).

other evidence in the record." *Id.* (**#11** at 31). Further, the ALJ noted that "a specific cause of symptoms was never settled upon by his providers . . . and in July 2011, Dr. Mahnke suggested that the claimant's cannabis use may have been causing symptoms[.]" (**#11** at 31–32). The ALJ also found that "while [Mr. Fowler] agreed to stop using marijuana, he did not." (**#11** at 32).

The ALJ's discussion reflects a misapplication of the *de minimus* legal standard for determining severity. *See Langley*, 373 F.3d at 1123. Initially, the ALJ's determination turned on the conclusion that Mr. Fowler's own statements regarding his symptoms were "not entirely consistent" with the medical and unspecified "other evidence." But the step two severity determination looks to medical evidence alone. *Langley*, 373 F.3d at 1123. It should not include an evaluation of the claimant's credibility, nor of "other" non-medical considerations.

Further, the ALJ's Decision rested in part on a finding that Mr. Fowler's own conduct had been "inconsistent with his alleged symptoms," based on his decision to decline certain tests or procedures on a few occasions, and his reports of pruning trees on another occasion. (**#11** at 31). The ALJ also emphasized that marijuana use may have caused his symptoms, and offered a finding that he had not stopped using marijuana after agreeing to do so. *Id.* at 31–32. None of this discussion alters or undermines the ALJ's own discussion and findings documenting Mr. Fowler's symptoms and course of treatment. In short, the ALJ's conclusion appears to have misapplied the controlling step-two "slight abnormality" *de* minimus legal standard by straying beyond the relevant medical factors to considerations of not only severity, but of causation, of Mr. Fowler's own credibility, behavior, and drug use, and of unspecified "other" evidence, or the record as a whole. These considerations might properly inform a later stage of the sequential analysis, but here were erroneously injected into the limited threshold analysis of the step two severity finding. *See Langley*, 373 F.3d at 1123; *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th

Cir.1988).

Moreover, to the extent the ALJ found Mr. Fowler's symptoms did not rise to the *de minimus* threshold of significantly limiting his ability to perform basic work activities, that finding is overwhelmed by contrary evidence and therefore fails the substantial evidence standard. *Musgrave*, 966 F.2d 1374. The ALJ's own summary of the medical records reflects that Mr. Fowler visited the Emergency Room not less than 31 times between 2010 and 2015. By Mr. Fowler's own count, he had 45 hospital visits between March 2010 and August 2015, for a total of 102 days in the hospital, or an average of some 20 hospital days per year. (#**14** at 8). Even the ALJ's own findings regarding the frequency of Mr. Fowler's symptoms and resulting hospital and medical visits defeats the conclusion that his impairments would not significantly limit his ability to perform basic work activities, such as responding appropriately to usual work situations and dealing with changes in a routine work setting, given the low, "de minimus" showing required at step two.[2] 20 C.F.R. §404.1522(b).

Further, the medical records—including those summarized by the ALJ—reflect Mr. Fowler's substantial loss of body mass. Despite having a reported normal weight of approximately 180 pounds, Mr. Fowler (who is elsewhere reported as 5'9" tall) reported weighing only 103 pounds as of a December 2015 hospital admission, and medical records report that he weighed 142 pounds in March 2010, and 131 pounds as of May 2015. This weight loss is acknowledged in the ALJ's summary of medical findings, but nowhere accounted for in the ALJ's conclusion that Mr. Fowler had overstated his symptoms and impairments. This record cannot support the ALJ's finding that Mr. Fowler did not have a at least a "slight

---

[2] Before the ALJ, a vocational expert testified that an employee in the positions considered possible for Mr. Fowler could not miss more than one day of work per month outside of paid time off, without facing termination. (#**11** at 56–57).

abnormality" significantly limiting on his ability to perform basic work activities, such as performing the physical functions of his work. Thus, in addition to misapplying the legal standard, the ALJ's step-two finding of non-severity is not supported by substantial evidence. When the correct *de minimus* standard is applied, overwhelming evidence contradicts the ALJ's finding of no severe impairments.

Lastly, it is notable that in defending the ALJ's step-two determination, the Commissioner emphasizes the ALJ's credibility determinations regarding Mr. Fowler's claims. The Commisioner's briefing relies on authority analyzing other steps in the sequential review process, and standing for general propositions regarding the ALJ's credibility determination and review of reported symptoms. But the Commissioner cites no authority addressing the step two severity determination.[3] The Commissioner's briefing thus *highlights* the ALJ's consideration of matters beyond the medical factors relevant at step two.

In sum, the Court finds the ALJ incorrectly applied the controlling *de minimus* legal standard regarding severity at step two; and, applying the correct standard, the ALJ's step two finding of non-severity was not supported by substantial evidence. Remand is therefore required. *Thompson*, 987 F.2d at 1487; *Musgrave*, 966 F.2d at 1374. The Court need not reach Mr. Fowler's other specific claims of error in the ALJ's step two analysis, including the treatment of Dr. Elzinga's opinion and of objective medical evidence.

**B.      The Commissioner's Futility or Mootness Argument**

Having concluded that the ALJ erred, the Court turns to the Commissioner's argument that remand is not required. Rather than leading with a defense of the ALJ's step-two analysis,

---

[3] The Commissioner acknowledges that SSR 16-3p superseded SSR 96-7p regarding assessment of a claimant's credibility, but argues that SSR 96-7p was appropriately applied here because the Decision was entered before SSR 16-3p issued. (#**15** at 8 n.5).

the Commissioner's first argument on appeal was that because Mr. Fowler's principal impairment is a substance abuse disorder, he is precluded from receiving disability benefits, regardless of any errors in the ALJ's Decision.  The Commissioner therefore argues that Mr. Fowler cannot prevail on remand, and so all of his arguments claiming error are rendered moot and remand would be futile.  (#**15** at 8).

Under the Social Security Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(C); 42 U.S.C. §1382c(a)(3)(J).  Therefore, in claims where drug addiction or alcoholism are among the claimant's medically determinable impairments and the claimant is found disabled, the ALJ must determine whether the drug or alcohol-related impairment is "material" to the finding of disability.  20 C.F.R. § 404.1535(a); Social Security Ruling (SSR) 13-2p, 78 Fed. Reg. 11939-01, 2013 WL 603764, at * 11940 (Feb. 20, 2013).  The materiality determination follows a process set by regulation.  20 C.F.R. § 404.1535(b).  "The key factor . . . is whether [the Commissioner] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol."  *Id.*

Here, the ALJ found Mr. Fowler had medically determinable cannabis hyperemesis syndrome, as well as substance abuse disorder.  But because the ALJ found Mr. Fowler was not disabled, the Decision included no factual findings as to whether drug addiction or substance abuse was material to Mr. Fowler's disability claim.  The Commissioner acknowledges that the ALJ did not undertake this analysis, but argues "there is no feasible argument that an ALJ would find [Mr. Fowler's] cannabis abuse was not material."  (#**15** at 6).  Therefore, the Commissioner asks the Court to affirm the ALJ's Decision on this alternate basis, despite any error in the ALJ's

step two severity determination.

The Commissioner's argument wrongly presumes that this Court, rather than an ALJ, will make the required factual findings regarding the materiality of Mr. Fowler's marijuana use in the first instance. This Court's role is not to make factual findings. *See* 42 U.S.C. § 405(g); *Musgrave*, 966 F.2d at 1374. To the contrary, the Tenth Circuit has instructed that reviewing courts should be skeptical of providing their own findings, should not usurp the Commissioner's fact-finding role, and should avoid rendering *post hoc* justifications of the Commissioner's adjudication of disability claims. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Only in exceptional circumstances may it be appropriate for the Court to supply its own dispositive findings on appeal. *Id.* This case is not such an exceptional instance, and the Court rejects the Commissioner's invitation to make novel, case-dispositive findings regarding the materiality of any drug addiction which might bar Mr. Fowler's DIB and SSI claims.

If, on remand, this determination becomes necessary to adjudicate Mr. Fowler's claims, then it must be addressed by the Commissioner in the first instance, pursuant to the controlling regulations and legal standards. Even if the Commissioner turns out to be correct that Mr. Fowler's marijuana use will be fatal to his claims, the Commissioner, not the Court, must first address this determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order. The Clerk shall enter a judgment in this matter.

Dated this 1st day of June, 2018

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Court